## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH ETZCORN, as Supervised Administrator of the Estate of Crystal Blagaich, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 25-cv-02231 |
| v. | ) ) | Judge Andrea R. Wood |
| JAMES MENDRICK, et al., | ) ) | |
| Defendants. | ) | |

## ORDER

Defendants' motion to dismiss [12] is granted. The First Amended Complaint [10] is dismissed without prejudice. Plaintiff is granted leave to file a second amended complaint that remedies the deficiencies in her First Amended Complaint by May 21, 2026. If Plaintiff declines to file a second amended complaint by May 21, 2026, this case will be dismissed with prejudice and judgment will be entered in favor of Defendants. Discovery is stayed. Telephonic status hearing set for April 23, 2026 is stricken; parties need not appear. See the accompanying Statement for details.

## STATEMENT

After she was arrested for retail theft in June 2023, Crystal Blagaich was detained in the DuPage County Jail ("Jail"). A little over a day into her detention, Blagaich was found unconscious in her cell and she passed away shortly thereafter due to fentanyl and hydroxyzine toxicity. Blagaich's mother, Plaintiff Deborah Etzcorn, now claims that Defendant James Mendrick, the DuPage County Sheriff ("Sheriff"), and the two Sheriff's Department officers responsible for booking Blagaich into the Jail, Defendants Linda Burnett and Hannah Detloff, failed to protect Blagaich against an overdose during her detention. Therefore, Etzcorn has brought this lawsuit asserting claims pursuant to 42 U.S.C. § 1983 for violations of her daughter's Fourteenth Amendment rights. Defendants have filed a motion to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 12.) For the reasons that follow, Defendants' motion is granted.

### I.

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the FAC as true and views those facts in the light most favorable to Etzcorn as the non-moving party *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The FAC alleges as follows.

On June 14, 2023, Blagaich was arrested for retail theft and taken to the Jail. (FAC ¶¶ 8–9, Dkt. No. 10.) Upon her arrival, Jail personnel observed an injury to Blagaich's leg and refused to take her into custody before she received medical care. (*Id.* ¶ 9.) Thus, Blagaich was taken to the hospital where she received treatment for her leg injury. (*Id.* ¶¶ 9–10.) She was then returned to the Jail just before midnight of that same day. (*Id.* ¶ 10.) Upon her return, Blagaich underwent an x-ray scan and Burnett and Detloff conducted a pat-down search of her person. (*Id.* ¶ 11.)

Shortly after midnight, Blagaich was put in a holding cell. (*Id.* ¶¶ 10–11.) Subsequently, she was moved to a different cell where she undressed and gave her clothes to Burnett and Detloff. (*Id.* ¶ 12.) Blagaich remained detained in that cell through the morning of June 16, 2023, when, at around 6:13 a.m., she was discovered unresponsive. (*Id.* ¶ 13.) She was promptly taken to the hospital, but she remained unresponsive and was ultimately pronounced dead. (*Id.* ¶ 14.) An autopsy revealed that Blagaich had died of fentanyl and hydroxyzine toxicity as a result of her ingestion of fentanyl while detained at the Jail. (*Id.* ¶ 15.)

Blagaich's mother, Eztcorn, brought the present action in her capacity as the supervised administrator of Blagaich's estate. The FAC alleges that Burnett and Detloff violated Blagaich's Fourteenth Amendment rights by failing to protect her from overdosing on fentanyl. In particular, the FAC faults Burnett and Detloff for not performing a sufficiently thorough search of Blagaich and the cells in which she was detained to ensure that she neither possessed nor had access to narcotics. Count I asserts § 1983 claims against both Burnett and Detloff, and Count II sets forth a § 1983 claim against the Sheriff, seeking to hold him liable pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

## II.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Defendants contend that the FAC must be dismissed because it fails to adequately plead a § 1983 claim.

As pleaded, the FAC alleges that, during the intake process, Defendants failed to take sufficient precautions to ensure that Blagaich did not possess narcotics. Specifically, Etzcorn contends that Burnett and Detloff should have strip-searched Blagaich before detaining her and should have searched the cells in which she was detained to ensure that narcotics were not hidden somewhere inside—such as in a mattress, for example.

Because Blagaich was a pretrial detainee, Etzcorn's claims arise under the Fourteenth Amendment, which requires her to show only that Defendants' conduct was objectively unreasonable. *Jump v. Village of Shorewood*, 42 F.4th 782, 792–93 (7th Cir. 2022). To state a Fourteenth Amendment failure-to-protect claim, a pretrial detainee must allege that:

2

(1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries.

*Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). Defendants argue that Etzcorn's failure-to-protect claim fails because she essentially alleges that Blagaich had a constitutional right to a strip search. However, no court has found that a pretrial detainee has a constitutional right to receive a strip search for their own protection; those that have addressed the matter have declined to recognize such a right. *See Jackson v. District of Columbia*, No. 25-cv-00889 (DLF), 2026 WL 890452, at *17 (D.D.C. Mar. 31, 2026); ("To this Court's knowledge, there is no authority for the assertion that the Fourth Amendment gives a constitutional right ***to be*** searched; in fact, multiple courts have held the opposite."); *Lankamer v. Lalley*, No. 24 C 506, 2024 WL 4119152, at *3 (N.D. Ill. Sept. 9, 2024) ("[T]he court has not found one case, nor has the Estate presented a case, that establishes that the Fourth Amendment requires officers to strip search a pretrial detainee to ensure the detainee's protection.").[1]

Etzcorn denies that her claims are based simply on Defendants' failure to perform a strip search of Blagaich. Rather, Etzcorn argues that Blagaich's addiction to drugs—namely, heroin—constituted a serious medical need and it was objectively unreasonable for Defendants to fail to take reasonable measures to protect her against the risk of overdose during her detention at the Jail. Regardless of how Etzcorn characterizes her claim, Defendants' conduct can only be considered objectively unreasonable if they were "on notice of a serious risk of harm to the detainee." *Thomas*, 39 F.4th at 841 (internal quotation marks omitted); *see also Bradford v. City of Chicago*, No. 16 CV 1663, 2021 WL 1208958, at *4 (N.D. Ill. Mar. 31, 2021) ("[O]bjective reasonableness is not measured by whether an officer ***should*** have had notice of a medical condition, but whether an officer having ***actual notice*** of an arrestee's medical condition acted reasonably." (internal quotation marks omitted)). But here, the FAC contains no well-pleaded facts from which it can be reasonably inferred that either Burnett or Detloff knew that Blagaich was addicted to heroin. Indeed, she was not arrested on drug-related charges nor did she possess drugs at the time of her arrest.

While Etzcorn's response brief clarifies that Blagaich's leg injury was related to her heroin addiction (presumably due to repeated injections in the area of the injury),[2] the FAC does not

---

[1] Although *Jackson* and *Lankamer* each address Fourth Amendment claims, the same objective reasonableness standard applies to both Fourth and Fourteenth Amendment claims. *Jump*, 42 F.4th at 793 ("Pretrial confinement claims . . .—whether characterized as arising under the Fourth or Fourteenth Amendment—are analyzed via the objective reasonableness standard." (footnote omitted)).

[2] The Court considers the new details provided in Etzcorn's response brief regarding Blagaich's leg injury, as her brief's elaboration on the cause of that injury is consistent with the FAC's allegations. *Geinosky v. City of Chicago*, 375 F.3d 743, 745 n.1 (7th Cir. 2012) (explaining that a plaintiff opposing a

allege that either Burnett or Detloff had any reason to know of that connection. Notably, the FAC does not allege that Burnett and Detloff were present when the Jail initially refused to book Blagaich due to her leg injury. The first alleged interaction Burnett and Detloff had with Blagaich occurred *after* she received treatment for that injury at the hospital. Nor does the FAC contain any other allegation that would suggest that Burnett or Detloff even knew about Blagaich's leg injury, much less that injury's association with heroin use. And given that the FAC fails to plausibly allege that either Burnett or Detloff had actual notice of Blagaich's heroin addiction, the Court cannot find that either Defendant was objectively unreasonable in subjecting Blagaich to only an x-ray scan and a pat-down search. *See Thomas*, 39 F.4th at 841 ("[It] must be plausibly alleged that a reasonable officer in a defendant's circumstances would have appreciated the high degree of risk the detainee was facing."). Likewise, their failure to search Blagaich's cells thoroughly for concealed drugs was, at most, negligence, which does not suffice to plead objective unreasonableness. *E.g.*, *Starks v. Dart*, No. 24 C 9509, 2025 WL 2838956, at *3 (N.D. Ill. Oct. 7, 2025) ("[A] plaintiff must show that the defendants' conduct is 'objectively unreasonable,' which must be more than negligence." (quoting *Kemp v. Fulton County*, 27 F.4th 491, 498 (7th Cir. 2022))).

In sum, the FAC's § 1983 claims against Burnett and Detloff fail because the FAC does not adequately allege that either Defendant acted objectively unreasonably when booking Blagaich into the Jail. And because the FAC fails to plead an underlying constitutional violation against Burnett or Detloff, it necessarily fails to state a *Monell* claim against the Sheriff. *E.g.*, *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." (internal quotation marks omitted)).

### III.

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 12) is granted. The FAC is dismissed without prejudice. Etzcorn is granted leave to file a second amended complaint that remedies the deficiencies discussed in this order by May 21, 2026.

Dated: April 23, 2026

_____
Andrea R. Wood
United States District Judge

---

Rule 12(b)(6) motion may "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings").